## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO:

KATHERINE ODDY,

       Plaintiff,                                  **JURY TRIAL DEMANDED**

v.


CLYDE M. COLLINS, JR. and JANIE BOYD
& ASSOCIATES REAL ESTATE SERVICES LLC,

       Defendant.
_____/

### COMPLAINT

Plaintiff Katherine Oddy ("Plaintiff") sues Defendant Clyde M. Collins, Jr. ("Defendant Collins") and Defendant Janie Boyd & Associates Real Estate Services LLC ("Defendant JB&A" and, together with Collins, "Defendants") for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act, and JACKSONVILLE, FLA., CODE OF ORDINANCES Sec. 408.207 (2020). Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

1

## JURISDICTION AND VENUE

1.      Plaintiff brings this action against Defendants, in part, for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act. As such, jurisdiction of this Court exists for the Fair Housing Act claim under 28 U.S.C §1331.

2.      Plaintiff brings this action against Defendants, in part, for violating JACKSONVILLE, FLA., CODE OF ORDINANCES Sec. 408.207 (2020). Defendants' conduct underlying this violation also forms the basis of Defendants' Fair Housing Act violation. As such, supplemental jurisdiction exists for the Sec. 408.207 claim under 28 U.S.C. §1367.

3.      This Court has personal jurisdiction over Defendant and venue is proper in this District because the subject property is located in this District, Plaintiff resides in this District, Defendant transacts business in this District, and the complained conduct of Defendant occurred in this District.

## PARTIES

4.      Plaintiff is a natural person and a citizen and resident of Florida.

5.      Defendant Collins is a natural person and a citizen and resident of Florida.

6.      Defendant JB&A is a Florida limited liability company with its principal place of business located in Jacksonville, Florida.

7.      Unless otherwise indicated, the use of Defendant JB&A's name in this Complaint includes all agents, employees, officers, members, directors, heirs,

2

successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

8.      Plaintiff suffers from Post Traumatic Stress Disorder ("PTSD") and Anxiety. Overall, Plaintiff has difficulties coping with stress and anxiety in her day-to-day life.

9.      Plaintiff owns an elderly dog, Beetle, as well as an elderly cat, Bats, that both help to alleviate Plaintiff's PTSD, Anxiety, and other symptoms that arise therefrom. Beetle and Bats are each an emotional support animal ("ESA") that have proven to provide comfort to Plaintiff and serve to address the needs caused by Plaintiff's disabilities.

10.     Neither Beetle nor Bats require training to perform tasks for Plaintiff. Instead, it is the presence of Beetle and Bats which alleviates Plaintiff's PTSD and Anxiety and provides Plaintiff with necessary therapeutic emotional support.

11.     On February 29, 2024, Plaintiff, through Trulia.com, expressed interest in renting property located at 3582 Hedrick St, Unit #1, Jacksonville, FL 32205 (the "Property").

12.     Defendant Collins is the owner of the Property.

13.     Subsequently, Defendant JB&A, through its real estate agent Cheryl Laucks ("Laucks"), contacted Plaintiff to follow up on Plaintiff's interest in renting the Property.

14.     Defendant JB&A is a real estate broker.

15.     Plaintiff scheduled a viewing of the Property with Laucks for March 2, 2024. Laucks subsequently sent Plaintiff, via electronic mail, the full listing information for rental of the Property.

16.     On March 1, 2024, Plaintiff asked Laucks, via electronic mail, whether the arranged viewing time could be moved from 10:00 AM to 10:30 AM. Laucks promptly responded: "Yes, see you at 1030. Have a nice night."

17.     On March 2, 2024, at approximately 10:20 AM, Plaintiff arrived at the Property. Shortly thereafter, at approximately 10:30 AM, Laucks arrived. Plaintiff and Laucks then entered the Property for the viewing.

18.     During the viewing, Laucks exchanged multiple pleasantries with Plaintiff, including, but not limited to: (1) expressing, through words and tone, that she was impressed by Plaintiff's occupation; and (2) acknowledging that she and Plaintiff shared a mutual hobby in baking and that Plaintiff should include this hobby on her application as a bonus because the apartment would always smell like baked goods.

19.     Towards the end of the viewing, Plaintiff asked whether there was access to the St. Johns River close to the Property. Laucks stated that she was not sure of the exact location but thought it could be one or two streets over from the Property.

20.     Plaintiff and Laucks exchanged goodbyes in a positive and friendly manner.

21.     Mere minutes after departing the Property, Laucks called Plaintiff and eagerly informed her that there was river access on Talbot Avenue and Edgewood Avenue South.

22.     Approximately two hours after the viewing, Laucks sent Plaintiff, via electronic mail, a rental application for the property. Approximately one hour later, Plaintiff promptly completed the rental application and returned it to Laucks, along with supporting documents.

23.     Laucks then informed Plaintiff, via text message, that, despite not yet receiving Plaintiff's application fee, Defendant JB&A would begin to get Plaintiff's application "moving." Laucks further inquired as to Plaintiff's preferred move in date to which Plaintiff responded that she wanted to move in on March 9, 2024. Laucks responded that Plaintiff's rental application had been submitted for review, along with Plaintiff's proposed move-in date. Laucks indicated that she would be in touch on March 4, 2024.

24.    On March 4, 2024, Laucks called Plaintiff to inform her that she had to bring her application fee to Defendant JB&A's office. Laucks advised Plaintiff that Plaintiff could bring the application fee and security deposit of $1,150.00 to Defendant JB&A's office. Plaintiff sought confirmation that, pursuant to the rental description, the first month's rent of the Property would be half off. Laucks advised that she was not aware of this, but that she would check with a supervisor to confirm. Shortly thereafter, via text message, Laucks confirmed that the first month's rent would be half off.

25.    That same day, Plaintiff arrived at Defendant JB&A's office to drop off her application fee and security deposit. Plaintiff exited her vehicle and waited outside Defendant JB&A's office for Laucks to arrive. Shortly thereafter, Laucks, who was driving on the opposite side of the road facing Defendant JB&A's office, honked at Plaintiff in a friendly manner to indicate that she would be pulling into the office shortly. Laucks subsequently parked in front of Defendant JB&A's office and exited her vehicle. Laucks and Plaintiff exchanged pleasantries and entered Defendant JB&A's office.

26.    In Defendant JB&A's office, Laucks commented that the lease agreement was still being finalized, but that the then-current plan was for Plaintiff to come back to Defendant JB&A's office on Saturday, March 9, 2024, to sign the lease, pay first month's rent, and obtain keys to the Property. Laucks then collected Plaintiff's security deposit and application fee.

27.     While Laucks processed the security deposit and application fee, she conversed with Plaintiff regarding Plaintiff's move-in process. Plaintiff indicated that she had scheduled electric service to begin at the Property on March 8, 2024, which was the day prior to the then-scheduled move-in date. Laucks said this was alright because no one would be in the Property until Plaintiff moved in. Once Laucks finished processing Plaintiff's security deposit and application fee, she told Plaintiff, in a friendly manner, that Plaintiff was all set and advised Plaintiff to call the movers.

28.     On March 6, 2024, Plaintiff received a letter (the "ESA Letter") from Deborah Dungan, LMHC ("Dungan"), who is a licensed mental health counselor pursuant to Chapter 491, *Florida Statutes*.

29.     The ESA Letter advised:

> Katherine Oddy is my patient, and I am intimately familiar with her emotional history. She meets the definition of the disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973.
>
> Due to her emotional issues (PTSD/Anxiety), she has difficulties regarding coping with stress and anxiety. To help her alleviate these difficulties and enhance her to fully use and enjoy the apartment you own and/or administer, I am prescribing the emotional support animals that will assist Katherine in coping with her PTSD/Anxiety.
>
> Her elder dog (Beetle) and elder cat (Bats) who have been together all of their lives have their appropriate vaccinations and no past history of aggression. They have proven to provide comfort to Katherine.

> I am familiar with the voluminous professional literature concerning the therapeutic benefits of assistance animals for people with emotional issues such as that experienced by Katherine. If you should have further questions regarding my recommendation for Katherine to have support animals, please do not hesitate to contact me.

30.     Immediately after receiving the letter, Plaintiff called Laucks to advise her of the ESA Letter and to also provide supporting vaccination records for Beetle and Bats. However, Laucks did not answer.

31.     Shortly thereafter, but also on March 6, 2024, Laucks informed Plaintiff, via text message, that once the lease agreement was finalized, she would confirm that Plaintiff could sign the lease, pay first month's rent, and obtain keys to the property on Friday March 8, 2024. This was a day earlier than the original plan and the day that Plaintiff had scheduled electricity service to begin at the Property.

32.     Shortly thereafter, but also on March 6, 2024, Laucks called Plaintiff. Plaintiff explained that she had ESAs and had just obtained the ESA Letter and vaccination records for Beetle and Bats. There was a tense moment of silence from Laucks, after which Laucks requested, in a serious tone, that Plaintiff send her the ESA Letter. Plaintiff replied that she would do so immediately.

33.     Plaintiff immediately sent Laucks, via electronic mail, the ESA Letter and vaccination records that same day. Plaintiff also informed Laucks, via electronic mail, that both Beetle and Bats were trained well, non-aggressive, and non-damaging. Plaintiff

closed her electronic mail correspondence to Laucks by saying: "[i]f [the] landlord has any questions or requests, I am happy to discuss it with him directly if needed."

34.     At all times material hereto, Defendants *did not* request additional documentation, aside from the ESA Letter, from Plaintiff.

35.     At all times material hereto, Defendants did not request information regarding the specific need for each of Plaintiff's ESAs.

36.     On March 7, 2024, *the day after Plaintiff informed Defendant JB&A of her ESAs*, Plaintiff received a call from Janie Boyd ("Boyd"), a real estate agent for Defendant JB&A. Boyd informed Plaintiff that she would be unable to rent the Property.

37.     In dissatisfaction, Boyd further informed Plaintiff that Defendant Collins had shown the Property to other potential tenants over the weekend, but that Defendants had chosen Plaintiff's application instead.

38.     Boyd further reasoned Plaintiff that Beetle was 65 pounds, implying that Beetle's weight would exceed a weight restriction. Plaintiff advised Boyd that weight restrictions were prohibited under applicable fair housing laws. Boyd responded that *she knew this*, but that Plaintiff would still be unable to rent the Property.

39.     Plaintiff asked Boyd whether she was aware of the protections of the Fair Housing Act. Boyd responded that she *was aware of them*, but that Plaintiff would still be unable to rent the Property.

40.     Plaintiff was at a loss for words so chose to end the call with Boyd at this point.

41.     As a result of being denied rental of the Property, Plaintiff immediately suffered physical manifestations of her Anxiety including, but not limited to, physical shaking. Plaintiff immediately called Dungan and left a voicemail message stating that she was experiencing severe Anxiety and distress due to her ESA accommodation being denied by Defendants.

42.     Approximately two hours after Plaintiff's first call with Boyd, Plaintiff called Boyd again to inquire when she could pick up her security deposit. Plaintiff further stated that she would be obtaining legal representation for the discriminatory practices of Defendant. Boyd laughed in response.

43.     Shortly after Plaintiff's second call with Boyd, Dungan called Plaintiff to return her voicemail. Plaintiff and Dungan talked for ten minutes in an attempt to deescalate Plaintiff's now spiked Anxiety.

44.     On March 8, 2024, *the day after Plaintiff informed Boyd that she would be seeking legal representation*, Boyd forwarded Plaintiff an electronic mail communication from Defendant Collins which read, in pertinent part:

> I have reviewed the pictures taken by the plumbers of David Gray. The sewage line is severely cracked and needs to be replaced as soon as possible. The crack is most likely the cause of the mildew in the apartment building. Renting [the Property] is not feasible at this time in light of the health hazard. [I] will let you know when I anticipate completing

10

the repairs for which the apartment can be rented without health concerns.

45.     Before receiving the above communication, Defendants had *never* told Plaintiff that the Property was not, or might not be, move-in ready by Plaintiff's scheduled move-in date. To the contrary, before Plaintiff disclosed her need for ESAs, Defendant JB&E had constantly represented, both explicitly and implicitly, that Plaintiff would be able to move into the Property on either March 8 or 9, 2024. Defendants had also been showing the Property to multiple people, including Plaintiff, the weekend before the above communication was sent to Plaintiff.

46.     On or about April 25, 2024, Plaintiff was able to rent a different property. However, Plaintiff had to rent this property at a price that exceeded what she would have paid to rent the Property.

## COUNT I
## VIOLATION OF 42 U.S.C. § 3604(f)(1)
### (Against Defendants)

47.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-9, 11-33, and 36-46 as if fully set forth herein.

48.     Section 3604(f)(1) of the Fair Housing Act makes it unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter.

49.     As set forth in more detail above, Plaintiff suffers from multiple mental impairments, which renders Plaintiff disabled for purposes of the FHA.

11

50.    At minimum, upon Plaintiff's providing of the ESA Letter, Defendants had notice of Plaintiff's disabilities and the ability to conduct a meaningful review.

51.    As a result of Plaintiff's disabilities, Plaintiff required the aid of her ESAs, Beetle and Bats, to alleviate the challenges caused by her disabilities and to fully use and enjoy the benefits of the Property. It was not until Plaintiff revealed to Defendants that Plaintiff suffered from these disabilities and required an accommodation which necessitated Plaintiff's need for her ESAs, Beetle and Bats, that Defendants denied Plaintiff rental of the Property.

52.    Defendants denied Plaintiff rental the Property just one day after Plaintiff disclosed her need for her ESAs, Beetle and Bats.

53.    A discriminatory purpose, and not any legitimate reason, was a motivating factor behind Defendants' denying Plaintiff rental the Property.

54.    As such, Defendants discriminated against Plaintiff by denying Plaintiff rental the Property, of which Plaintiff was otherwise fully qualified for and had already scheduled a move in date for, because Plaintiff's disability necessitated a need for ESAs.

55.    As a result of Defendants' unlawful denial of Plaintiff to rent the Property, Plaintiff has suffered pain, emotional distress, embarrassment, and costs associated with seeking to resolve the matter.

56.    WHEREFORE, Plaintiff, respectfully, requests that this Court:

a. Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the Fair Housing Act;

b. Award actual and punitive damages to Plaintiff against Defendants;

c. Award Plaintiff costs and reasonable attorneys' fees; and

d. Award any other relief that this Court deems appropriate and just under the circumstances.

## COUNT II
## VIOLATION OF 42 U.S.C. § 3604(f)(3)
### (Against Defendants)

57.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-9, 11-33, and 36-55 as if fully set forth herein.

58.     As stated above, Plaintiff suffers from mental impairments and is disabled within the meaning of the Fair Housing Act. Plaintiff requested a reasonable accommodation for her rental of the property, namely, the allowance of Plaintiff's ESAs, Beetle and Bats, and provided Defendants with documentation from Plaintiff's therapist evidencing that the requested accommodation was necessary to afford Plaintiff an opportunity to use and enjoy the Property. Defendants, however, conducted no meaningful review of Plaintiff's request nor sought any additional information concerning Plaintiff's disabilities and ESA. Instead, Defendant refused the

accommodation requested by Plaintiff, explicitly denying Plaintiff rental of the Property just one day after Plaintiff's reasonable request was made.

59.      As a result of Defendant's unlawful failure-to-accommodate, Plaintiff has suffered pain, emotional distress, embarrassment, and costs associated with seeking to resolve the matter.

60.      WHEREFORE, Plaintiff, respectfully, requests that this Court:

      a.  Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of the Fair Housing Act;

      b.  Award actual and punitive damages to Plaintiff against Defendants;

      c.  Award Plaintiff costs and reasonable attorneys' fees; and

      d.  Award any other relief that this Court deems appropriate and just under the circumstances.

## COUNT III
## VIOLATION OF JACKSONVILLE, FLA., CODE OF ORDINANCES
## Sec. 408.207
## (Against Defendants)

61.      Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-46 as if fully set forth herein.

62.      JACKSONVILLE, FLA., CODE OF ORDINANCES Sec. 408.207 (2020) provides, in pertinent part, that:

14

> [I]t is unlawful to discriminate in the provision of housing to a person with a disability or disability-related need for, and who has or at any time obtains, an emotional support animal. A person with a disability or disability-related need must, upon the person's request and approval by a housing provider, be allowed to keep such animal in his or her dwelling as a reasonable accommodation in housing, and such person may not be required to pay extra compensation for such animal.

63. As stated above, Plaintiff suffers from PTSD and Anxiety.

64. As a result of Plaintiff's disabilities, Plaintiff required the aid of her ESAs, Beetle and Bats, to alleviate the challenges caused by her disabilities and to fully use and enjoy the benefits of the Property. It was not until Plaintiff revealed to Defendants that Plaintiff suffered from these disabilities and required her ESAs, Beetle and Bats, to live with her that Defendants denied Plaintiff rental the Property.

65. Defendants denied Plaintiff rental the Property just one day after Plaintiff disclosed her need for her ESAs, Beetle and Bats.

66. A discriminatory purpose, and not any legitimate reason, was a motivating factor behind Defendants' denying Plaintiff rental the Property.

67. As such, Defendants discriminated against Plaintiff by denying Plaintiff rental of the Property, of which Plaintiff was otherwise fully qualified for and had already scheduled a move in date for, because Plaintiff's disability necessitated a need for ESAs.

68.     As a result of Defendants' unlawful denial of Plaintiff's rental the Property, Plaintiff has suffered pain, emotional distress, embarrassment, and costs associated with seeking to resolve the matter.

69.     WHEREFORE Plaintiff, respectfully, requests that this Court:

> a.  Declare the above-mentioned actions, omissions, polices, and procedures, of Defendants to be in violation of JACKSONVILLE, FLA., CODE OF ORDINANCES Sec. 408.207 (2020);
>
> b.  Award actual and punitive damages to Plaintiff against Defendants;
>
> c.  Award Plaintiff costs and reasonable attorneys' fees; and
>
> d.  Award any other relief that this Court deems appropriate and just under the circumstances.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.

Dated: June 15, 2024

Respectfully Submitted,

/s/ Zane C. Hedaya
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**
Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136

*COUNSEL FOR PLAINTIFF*